TIMOTHY REMICK *vs.* JOSEPH H. SANDFORD & others.

Suffolk.　March 11. — June 24, 1875.　AMES & ENDICOTT, JJ., absent.

In an action upon a broker's note in which the goods are named as "sold for account of " the plaintiff to the defendant, "cash, terms 30 days," it is competent for the defendant to show by parol, in the absence of evidence that the broker was his general agent, that the contract signed by him was not the real contract between the parties, which was a sale by sample.

Where the testimony is conflicting upon the issue whether a written contract made by a special agent was orally accepted and adopted by the principal, it should be submitted to the jury.

CONTRACT against Joseph H. Sandford, George Lovejoy and Robert P. Gould, copartners, doing business under the firm name of O. A. Bingham & Co., to recover the price of twenty-four bags of wool sold by the plaintiff to the defendants. Trial in the Superior Court, before *Dewey*, J., who reported the case to this court in substance as follows :

Henry R. Williams, a wool broker, testified for the plaintiff, that the sale and purchase of the wool sued for was made through him as a wool broker ; that he went to the plaintiff's storehouse with the defendant Lovejoy to look at the wool ; that one Hall, in the employ of the plaintiff, went from the plaintiff's office with them to the storehouse to show the wool ; that Lovejoy did not then decide to take the wool, but afterwards about noon of the same day the witness met Lovejoy on the street when he said they, the defendants, would take the wool at the price named. The witness then went to his office and made out duplicate sale notes, and the same day delivered one to the plaintiff and the other to Lovejoy at the defendants' place of business, who looked at it and said, "All right." The sale note which was delivered

was shown to the witness, who identified it as one of the notes made by him, and was as follows:

"Boston, Mar. 20th, 1872.

Sold for account of Mr. T. Remick to O. A. Bingham & Co.

Abt. 5500 lbs. Un'hs Fleece Wool, price,     49c.

1 Bag Super pulled,              "      90c.

Bags a value.

Tare 3 lbs. each.

Cash.   Terms, 30 days.         H. R. Williams, Broker."

The witness further testified that he afterwards saw the wool sold at the store of the defendants. On cross-examination, the defendants were proceeding to interrogate the witness as to statements and representations made by Hall at the time of the examination of the wool at the plaintiff's storehouse, when the plaintiff objected on the ground that the sale note was written evidence of the contract and could not be varied or affected by parol testimony, and that parol testimony of representations made during the course of negotiations, prior to the written contract of sale, were not admissible. Thereupon the defendants, on motion, amended their answer, alleging fraudulent representations in the sale of the wool.

Williams further testified that the wool sold was a very heavy lot of unwashed fleece wool; that six or eight bags, about one third of it, were emptied out on the floor. Hall said the rest of the wool was in the next room in bags, and could be got out in a few moments; that Lovejoy looked at the pile, and also looked at the bag of super pulled wool which was open at the end, and said that would do. The witness said he examined all the wool the day before the sale; that some of the bags were open at the end, and some he cut open and looked at the mouth of the bags; that Lovejoy might have asked Hall if it was all one clip; that Hall said it was all bought of one man and he supposed the bags were all alike. This was the only lot of fleece wool the plaintiff had at that time; that the wool in bags was in the centre of the next room on the same floor, the ends of the bags cut open; that this room was darker than the other room, but the doors could be opened and the room made light; that Lovejoy went into this room to look at the bag of pulled wool, and told the witness that his porter had been down before to see the wool; that Lovejoy

did not say to Hall that he would send for the wool; that two or three days after the sale the witness went to the defendants' store to look at the wool at their request, and saw part of the wool emptied out of the bags. The witness testified, under the plaintiff's objection and exception, that he did not say that it was not the wool purchased by the defendants; and also testified that the price was a fair price for the wool at the time of the sale, and that he had no interest besides commissions which were paid. The weight of the wool as declared, and its delivery to the defendants were admitted.

Lovejoy, one of the defendants, testified, that the broker requested him to go and see the wool; that he went with him to the plaintiff to see it; that he found three or four bags opened in a corner, and handled and examined it; that Hall said the balance of the lot was in the next room, and it was some trouble to get it out, — the room where it was was dark and full of goods; — that he told Hall that, if the three or four bags fairly represented the lot, and it was all like the sample, they would take it; and Hall said it did and was, and he then purchased the wool; that the wool, as shown by that sample, was a very good lot of unwashed fleece wool, with one bag of pulled wool; that he then told Hall that he would send his own teams for the wool when ready to receive it; that the same day, about five P. M., two loads of wool were sent by the plaintiff, by his own teams, to the defendants' store, and were hoisted up into the defendants' loft by the defendants' men; that early the next morning the wool was partly opened and found very different from that seen, being a very hard lot of unwashed fleece wool, containing the heaviest kind of buck fleeces, with many tag-locks; these being the wool shorn from round the breech of the sheep, and less valuable than unwashed wool; that while the shrinkage of the three or four bags shown was about 55 per cent., the shrinkage of the lot delivered was at least 75 per cent.; that shrinkage is an important feature in buying wool; that the weight of the sample was about four and one half to six pounds per fleece; that of the lot delivered was from twelve to eighteen pounds; that eight or ten bags of the wool sent were opened, and while there might have been an occasional fleece like the sample shown, the lot delivered, so far as examined, was a very different lot; that

he told the man to stop opening the wool, and sent at once for Hall; that Hall was out of town, and that thereupon he wrote to the plaintiff that the wool received not being like the sample, they refused to accept it, and held the same subject to his order; and again two days later, he wrote, in reply to a letter from the plaintiff stating that the wool was fairly represented and that he should hold them to the trade, a second letter returning the plaintiff's bill and requesting the removal of the wool without delay. The letters were produced. That in the mean time he had sent for the broker and taken him into the loft to see the wool, where he said that "the wool was not the wool which had been sold." The plaintiff objected to the question as to anything said at that time by the broker, and the evidence was admitted, the plaintiff excepting. The witness also testified that the price, as agreed, was to be forty-nine cents, while that sent was worth only from thirty to thirty-two cents per pound; that of the bag of pulled wool, about one third was No. 1 quality instead of super, as agreed, — super being worth ninety cents, and No. 1 being worth fifty cents; — that the broker's note was passed into the defendants' office, but he did not know when; that when the wool was delivered the sample had been mingled with the rest so that he could not pick out the sample from the rest of the wool; that he told Hall, at the time he came to look at it at the defendants' store, that the difference between the sample and the lot delivered was so wide that he considered it a swindle; that the wool was repacked in the original bags, and placed in a loft convenient for delivering to the plaintiff's order, and there remained, subject to such order, open for anybody to examine for about six months, until it was burned in the fire of November 9, 1872.

Much testimony was put in by the defendants as to the quality and condition of that part of the wool opened at the defendants' store, but no other evidence as to representations of fraud. The defendant Lovejoy, on cross-examination, testified: " When I vent down to look at the wool, Hall showed me where the rest of the wool was. I went into the other room where the wool in bags was. Hall said it was inconvenient to get it out, but that he could get it out. I saw the bags piled up with the ends cut open. I saw the bags of wool, not the wool. I examined the pulled wool and said I would take that. It was in the forenoon

that I went down to look at the wool. I was at the store about four or five o'clock when I saw the wool drive up. The wool was delivered that night. I am as positive of that as any fact I have testified to in the case. We did not open all the bags at our store. I should say eight or ten bags were opened."

The defendants having closed their evidence, the plaintiff asked the judge to rule that there was no evidence to sustain the allegation of fraudulent representations set up in the defendants' answer, and to direct a verdict for the plaintiff. The defendants contended that there was evidence which should be submitted to the jury upon the allegation of fraud. The plaintiff further contended that no parol evidence as to the sale by sample, or as to whether the bulk of the wool corresponded with the sample, was admissible, because the broker's note constituted and was a contract in writing between the parties, and could not be affected or varied by such parol evidence.

The defendants contended that parol evidence was admissible to show the sale was in fact by sample, and that the bulk did not correspond with it, and that they might do this both under the written note, and further to show that such note in omitting that element of the sale omitted an essential element of the contract of sale, and so the note was inoperative and void, and asked that the case should be submitted to the jury on the issue of sale by sample and on the issue of fraudulent representations.

The case was, by the agreement of the parties, reported for the determination of this court, as follows : " If the case, on the evidence introduced, should have been submitted to the jury on the question of fraud in the sale, or on the question of sale by sample, then the case to stand for trial ; otherwise the plaintiff to have judgment for the amount claimed in his declaration, and interest from date of writ."

*T. H. Sweetser & F. S. Hesseltine*, for the plaintiff.

*C. T. Russell*, for the defendants, was not called upon.

MORTON, J. At the trial the plaintiff relied upon a written paper usually called a " sold note," signed by the broker through whom the sale of the goods sued for was negotiated. If the broker was authorized by the defendants to sign this note, or if, after he signed it, the defendants accepted and adopted it as their contract, it would be binding on them, and it would not be compe-

tent for them to prove by parol any terms of the sale which differ from those expressed in the written contract. *Cabot* v. *Winsor,* 1 Allen, 546. But it was for the jury to determine whether the broker had such authority, or whether the defendants accepted the sold note as their contract, and upon these questions parol testimony was competent. The evidence stated in the report shows that the broker was employed by the plaintiff to sell the goods in question, and that he sold them to the defendants, but it does not tend to show that he was the general agent of the defendants, or that he had any authority to act for them except such as is implied from the fact that they dealt with him as a broker in this single contract of sale. By thus dealing with him, they gave him authority, as broker, to sign a memorandum of the contract actually made, which would be binding upon them. But his authority was strictly limited to this. He could reduce to writing and sign the contract into which the defendants entered, but not a different contract. And for the purpose of showing that the contract signed by the broker was not within his authority, it was competent for them to show by parol testimony that the contract which they made was different. *Coddington* v. *Goddard,* 16 Gray, 436. *Dodd* v. *Farlow,* 11 Allen, 426. It follows that the evidence introduced by the defendants to show that the sale to them was a sale by sample should have been submitted to the jury.

The ground taken by the plaintiff, that the defendants after the sale accepted and adopted the sold note as their contract, presents a question of fact and not of law. They did not accept it in writing; the question whether they accepted it orally is a question of fact, depending upon conflicting testimony, and should have been submitted to the jury. The case therefore must stand for trial.

The only other question is whether there was sufficient evidence to go to the jury, upon the issue of fraudulent representations raised by the answer. But as there must be a new trial upon other grounds, at which the evidence will probably be different from that given at the former trial, it is not necessary or useful to discuss this question.     *Case to stand for trial.*