Bacon and another vs. Eccles, Jr., and others.

BACON and another vs. ECCLES, JR., and others.

STATUTE OF FRAUDS: SALE OF GOODS. *(1, 2) Valid sale must be shown in vendee's action for breach. (3-6) Memorandum. (7, 8) Acceptance.*

1. In an action for breach of a contract to sell and deliver goods, plaintiff must show a contract *valid under the statute of frauds.*

2. Where the contract alleged was to sell and deliver to plaintiff goods not only *of a specified brand*, but also *of a specified grade*, and the goods sent were refused as *not of such grade*, a valid contract for goods of that grade must be shown.

[3. Whether an invoice in the usual form, " A. B. bought of X. Y.," etc. (the name of the vendor appearing only in the printed bill-head), is a memorandum *subscribed* by the vendor, within the meaning of the statute, *quære.*]

[4. Whether letters written by the vendor *after* the vendee's refusal to accept, are ever admissible against him as a written memorandum within the meaning of the statute, is not here decided; the vendor's letters here denying an essential element of the contract as declared on.]

5. If the broker by whom a sale of goods is negotiated, being the agent of both parties, makes an entry of the terms of sale in his books, his signature thereto will satisfy the statute. R. S., ch. 107, sec. 8.

6. If such broker delivers to the respective parties the usual bought and sold notes, signed by him, and these notes, agreeing with each other, are received by both parties without objection, this also is a compliance with the statute. But otherwise in case of a *material variance* between the two notes.

7. No acts of the vendee of goods by contract otherwise void by the statute, constitute an acceptance of the goods, within the meaning of the statute, unless they *vest the title* in the vendee.

8. Where, therefore, the vendee insures the goods *in transitu*, pays the freight, and, intending to accept the goods if found to be such as ordered, takes them into his possession for examination, and then, within a reasonable time, refuses to accept them, as not conforming to the order, this is *not an acceptance* within the meaning of the statute, if the goods are not in fact such as the order called for. *Smith v. Stoller*, 26 Wis., 671, distinguished.

APPEAL from the County Court of *Milwaukee* County.

In 1876 the plaintiffs were partners and merchants in the city of Milwaukee, and the defendants were partners and

sugar refiners in the city of Baltimore. One Brewster, a broker, was employed by the defendants to find purchasers for their sugars in the Milwaukee market. In June of that year, Brewster negotiated a sale on behalf of the defendants, to the plaintiffs, of one hundred barrels of sugar, and immediately sent a telegram to the defendants, which, although abbreviated, was understood by them to mean, that he had an offer from the plaintiffs to purchase one hundred barrels of their regular grade of " Canton C. C." sugar, at 8¼ cents per pound, to be shipped by the "Anchor Line." The defendants informed Brewster by telegraph, that they accepted the offer, and would deliver the sugar the ensuing week. Up to that time no other note or memorandum in writing of the contract was made. The defendants shipped one hundred barrels of " Canton C. C." sugar by the designated line, consigned to the plaintiffs at Milwaukee, and also forwarded to the latter an invoice thereof. The material portions of the invoice are as follows: " Bacon, Goodrich & Co. Bot. of Eccles, Thomas & Co., terms 45 days — with current rate of exchange on Baltimore — 100 barrels C. C. sugar." The " C. C." in the invoice is an abbreviation of " Canton C. C.," and denotes a brand of sugar of a certain standard which the defendants were selling in the market. The plaintiffs insured the sugar in transit, and paid the freight thereon from Baltimore. On the arrival of the sugar at Milwaukee, the plaintiffs received it in their store, examined it, and refused to accept it as a compliance with their contract with the defendants, on the ground that it was inferior in quality to that bargained for. Thereupon Mr. Brewster, with plaintiffs' consent, sold the sugar to other parties, who took it from the plaintiffs' store and paid them the sum advanced for freight.

A correspondence between the parties ensued, in which plaintiffs claimed that they did not purchase by standard alone, but by grade also; that Brewster, acting for defendants, sold them one hundred barrels of " Canton C. C." sugar, and stip-

ulated that it should be equal in grade or quality to a lot purchased by them of defendants in April preceding; and that they declined to accept the consignment as a compliance with the contract, for the reason that the grade was inferior to the April lot. On the other hand, defendants maintained that they sold the sugar by standard alone, and not by grade; and that the sugar consigned to plaintiffs was fully up to the regular standard of their " Canton C. C." sugar. They denied the authority of any broker to give any guaranty of grade or quality. They also declined to ship other sugar to the plaintiffs in place of the rejected consignment.

Plaintiffs brought this action before a justice of the peace, to recover damages for breach of the alleged contract to deliver sugar equal in quality to the April lot. The complaint states the contract to have been as claimed by plaintiffs in the correspondence above mentioned. It also alleges that plaintiffs refused to accept the sugar consigned to them because of its inferior quality. The answer is a general denial only.

Plaintiffs recovered before the justice, and defendants appealed to the county court. The only question of fact upon which the testimony there is conflicting is, whether the alleged sale was by grade, as plaintiffs claim, or by standard alone, as defendants claim. The court submitted this question to the jury.

The effect of the statute of frauds upon the alleged contract was the principal, indeed, the controlling question of law raised on the trial. The judge read to the jury the section of the statute (sec. 3, ch. 107, R. S.) applicable to the case, and instructed them that there was no evidence of a note or memorandum in writing of the contract, or of payment of part of the price of the sugar, to take the contract out of the operation of the statute; but he submitted to them the question, whether plaintiffs had accepted and received the sugar. The instruction as to what would be a sufficient acceptance to save the contract, is as follows: " Notwithstanding this contract

may have been originally void under the statute of frauds, yet if defendants undertook to comply with that void contract, and shipped the goods in pursuance of it to the plaintiffs, and plaintiffs received those goods with the intention of accepting them, then the case is taken out of the statute of frauds; because I do not understand that even in a case void by the statute of frauds, originally, where the goods are shipped and received, there must be such an acceptance of the goods as to bind the party receiving them as to the quality of the goods, provided there had been a contract with reference to the quality."

The jury found for the plaintiffs. A motion for a new trial, upon the ground, among others, that the verdict was against the evidence, was overruled, and judgment was entered for the plaintiffs for the damages assessed by the jury. Defendants appealed.

For the appellants, a brief was filed by *Finches, Lynde & Miller,* and the cause was argued orally by *H. M. Finch.* They argued, 1. That there was no note or memorandum of the contract signed by the party to be charged. (1) There must be a literal signing of the agreement at the end thereof. *Davis v. Shields,* 26 Wend., 347, 350, 353. (2) It must show the *real agreement. Davis v. Shields,* 349; *Salmon Falls M. Co. v. Goddard,* 14 How. (U. S.), 454; *Boardman v. Spooner,* 13 Allen, 353, 359; *Norris v. Blair,* 39 Ind., 91, 94; *Ide v. Stanton,* 15 Vt., 685; *McLean v. Nicoll,* 7 Jur., N. S., 999; Browne on Stat. of F. (2d ed.), §§ 376, 382. In such cases, he who sets up writings to bind the other party, cannot supplement them by oral proof of terms not contained in the writing. Benj. on Sales, § 210; *O'Donnell v. Leeman,* 43 Me., 160; *Salmon Falls M. Co. v. Goddard, supra.* The contract may be proved by parol, and the note or memorandum supplied by letters and documents written afterwards, if they all appear to have relation to it, and if, coupled together, they contain by statement or reference all the essential parts

of the bargain, signed by the party to be charged, or his agent (Benj. on Sales, § 208, note *g*); but parol evidence is not allowed to connect them. Benj., §§ 211, 250, and note *t;* *Wilkinson v. Evans*, L. R., 1 Com. Pl., 410; *Norris v. Blair*, and *Ide v. Stanton*, *supra;* *Fitzmaurice v. Bayley*, 9 H. L. Cas., 93, 94. In this case, the subsequent correspondence merely shows a *disagreement* of the parties as to what the contract was. *Cooper v. Smith*, 15 East, 103–107; *Smith v. Surman*, 17 E. C. L., 443–6 (9 Barn. & Cress., 561); *Fitzmaurice v. Bayley*, *supra*. (3) The construction and effect of the letters is a question for the court, and not for the jury. *Goddard v. Foster*, 17 Wall., 124; *Ranney v. Higby*, 5 Wis., 70, and Dixon's notes thereto on p. 627. 2. That the complaint itself shows that the goods were *not accepted*, and the action could not otherwise be maintained. The mere actual *receipt* of the goods was no acceptance. Blackburn on Sales, § 23; Benj. on Sales (1st Am. ed.), pp. 129–132, and cases there cited; *Kent v. Huskinson*, 3 Bos. & Pul., 233; *Shindler v. Houston*, 1 Coms., 269; *Hunt v. Hecht*, 8 Exch., 817; *Smith v. Stoller*, 26 Wis., 672. Even if the purchaser *wrongfully* refused to accept, such refusal rendered the sale invalid. *Gibbs v. Benjamin*, 45 Vt., 130; Benj. on Sales (1st Am. ed.), § 139. Where acceptance has *preceded* the receipt or delivery, delivery to a carrier designated by the buyer will answer the requirement of the statute *(Cross v. O'Donnell*, 44 N. Y., 664); but such delivery is not sufficient when there has been no such acceptance. *Rodgers v. Phillips*, 40 N. Y., 531, and cases there cited; *Caulkins v. Hellman*, 47 id., 454; *Allard v. Greasert*, 61 id., 4; *Grimes v. Van Vechten*, 20 Mich., 412; *Smith v. Bouck*, 33 Wis., 28 et seq. Payment of freight and insurance by the buyer would not take the case out of the statute; because, first, it was not paying any part of the price, nor was such payment made *at the time* of the alleged purchase *(Bates v. Chesebro*, 36 Wis., 636; *Paine v. Fulton*, 34 id., 83); and secondly, it was no such assertion of title as was

inconsistent with the seller's title. *Coombs v. Railway Co.*, 3 H. & N., 510; *Maberley v. Sheppard*, 10 Bing., 99 (25 E. C. L., 43); *Curtis v. Pugh*, 59 E. C. L., 111; GARDNER, J., in *Shindler v. Houston*, 1 Coms., 265; WRIGHT, J., in same case, pp. 271–2. Counsel further contended that Brewster had no authority to bind the defendants by such a contract as that alleged in the complaint.

For the respondent, a brief was filed by *Jenkins, Elliott & Winkler*, and the cause was argued orally by *Mr. Jenkins*. They contended, 1. That there was a sufficient note or memorandum of the contract. "Any note acknowledging the fact of the sale, mentioning the name of the vendor and the thing sold, and signed by the purchaser or his agent, will take the case out of the statute." Addison on Con., 80; *Penniman v. Hartshorn*, 13 Mass., 87; 6 East, 307; *Jackson v. Lowe*, 1 Bing., 9 (8 E. C. L., 222); *Saunderson v. Jackson*, 2 Bos. & Pul., 238; Benj. on Sales, §§ 232 et seq.; Hilliard on Sales, 524, § 12; 2 Parsons on Con. (4th ed.), 298; 3 id. (5th ed.), 4, 8, 17; 1 Chitty on Con., 98, 546, 549; Brown on Stat. of F., §§ 346, 347; Williams on Per. Prop., *73. 2. That plaintiffs "accepted and received" the goods, in the sense of the statute. Parsons on Merc. Law (2d ed.), 76; *Morton v. Tibbett*, 15 Q. B., 428; 2 Parsons on Con. (4th. ed.), 325; Benj. on Sales, § 153; *Cusack v. Robinson*, 1 Best & Smith, 299; *Currie v. Anderson*, 2 El. & El., 592 (105 E. C. L., 592); *Tomkinson v. Staight*, 84 E. C. L., 697. Even on the strictest doctrine of making ownership the test of consummate statutory acceptance, the facts of this case show such an acceptance, though not as of a complete fulfillment of the contract. The act of arranging with Brewster to let him sell was an act of ownership. *Marvin v. Wallis*, 6 El. & Bl. (88 E. C. L), 726; *Baines v. Jevons*, 7 Car. & P., 288 (32 E. C. L., 512); *Chaplin v. Rogers*, 1 East, 192; *Beaumont v. Brengeri*, 6 C. B., 301; *Lilywhite v. Devereaux*, 15 Maule & Sel., 285; *Elmore v. Stone*, 1 Taunt., 458; *Blenkinsop v. Clayton*, 7 id., 597;

*Vincent v. Germond*, 11 Johns., 283. The doctrine of *Morton v. Tibbett* has been followed in America, we believe, without any exception. The distinction between a statutory and common-law acceptance is indisputable in this country. *Ex parte Safford*, U. S. Dist. Court, Mass., 15 Nat. Bktcy. Reg., 564; *Remick v. Sandford*, 118 Mass., 102; *S. C.*, 120 id., 309; *Knight v. Mann*, 118 id., 143; *Townsend v. Hargraves*, id., 325. 3. That the appellants were estopped; that they assumed inconsistent positions, and sought advantage of their own wrong; that the position taken by them in the correspondence, and on the merits in court, was, not that there was no valid contract, but that it had been fully performed on their part, which necessarily imports that it had been taken out of the statute. *Jilson v. Gilbert*, 26 Wis., 637; *Nichols v. Mitchell*, 30 id., 332; Browne on Stat. of F., § 117, and cases cited. *Allegans contraria non est audiendus.* Broom's Leg. Max., *127. On the rule that no man can take advantage of his own wrong, see *Hyde v. Watts*, 12 Maule & Sel., 254, and many other cases there cited; Broom's Leg. Max., *210.

LYON, J. The contract stated in the complaint is, that "the defendants should sell and deliver to the plaintiffs, within a reasonable time, one hundred barrels of ' Canton C. C.' sugar, equal in quality to a certain lot of sugar last previously sold and delivered by the defendants to the plaintiffs," and that the plaintiffs should pay therefor at the rate per pound, and within the time, therein specified. The last previous sale referred to was in April preceding. It is essential to the plaintiffs' right of action, that they prove this allegation; and the verdict of the jury in their favor is conclusive of the proposition that if a valid contract was made by the parties for the purchase and sale of the sugar, such contract is correctly stated in the complaint.

It is undisputed, that the defendants have not, on their

part, performed any such contract; hence, if they made it, they are liable to respond in damages for the breach of it. If they did not contract, of course there is no breach and no liability. Hence the controlling question in the case is, Did the parties make a valid contract for the purchase and sale of " Canton C. C." sugar of the quality or grade specified in the complaint?

The alleged contract is within the scope of the statute of frauds, it being for the sale of goods for the price of more than fifty dollars, and cannot be upheld unless the requirements of that statute have been complied with. It is not claimed that the plaintiffs paid any part of the purchase money for the sugar at the time the alleged contract was made. Hence, to render the contract valid, it must be made to appear either, 1st. That a note or memorandum of the contract was made in writing, and subscribed by the parties to be charged therewith; or, 2d. That the plaintiffs accepted the sugar. R. S., ch. 107, sec. 3. It is claimed on behalf of the plaintiffs, that both these requirements of the statute were complied with in the present case.

1. We will first consider whether the defendants subscribed any note or memorandum in writing of the alleged contract; for in this cause they are the parties sought to be charged with the contract. If they did so, such note or memorandum must be found, either in the telegrams which passed between them and Brewster, or in their letters to the plaintiffs, written after the latter had rejected the sugar, or in the invoice sent to the plaintiffs. These are all the writings emanating from the defendants and relating to the transaction, which were read in evidence. We think that neither of these writings contains a note or memorandum of the contract alleged in the complaint. Certainly the telegrams do not. Brewster notified the defendants, by telegraph, that he had sold to plaintiffs one hundred barrels of " Canton C. C." sugar, and their telegram in reply is merely an approval of the sale and

a promise to deliver the sugar. There is no mention in these. telegrams of the quality or grade of the sugar, but the standard only is specified. The same is true of the invoice; for only the brand or standard, and not the grade, is mentioned therein. Hence, we need not stop to determine whether the statement of the terms of a contract in an invoice will satisfy the statute, where (as in the present case) the names of the parties to be charged appear thereon only in a printed billhead; but it would require argument to convince us that such an invoice answers the requirement of the statute, that the note or memorandum of the contract must be *subscribed* by the party to be charged.

The only contract to which the telegrams and invoice relate, would be performed on the part of the defendants by a delivery of merchantable " Canton C. C." sugar; that is, by the delivery of sugar conformable in kind, condition and quality, to what would be understood by the trade from the descriptive term employed. *Morehouse v. Comstock*, 42 Wis., 626. That the sugar consigned by the defendants to the plaintiffs was merchantable " Canton C. C." sugar, that is, of the grade or quality of sugar usually bought and sold in the market by that name, does not seem to be questioned.

The letters of the defendants expressly deny that the defendants made the contract alleged in the complaint. Perhaps these letters contain a sufficient note or memorandum of a contract to sell one hundred barrels of " Canton C. C." sugar; but if so, it is a contract to sell by standard, and not by grade — to deliver sugar which shall be up to their usual standard of " Canton C. C." sugar, not sugar of a better quality or grade. The question was argued, whether letters written by the defendants after the plaintiffs refused to accept the goods, can be resorted to for the purpose of showing a compliance with the provision of the statute under consideration; but we find nothing in those letters which renders it

necessary to pass upon the question, and it will not be here determined.

We conclude, therefore, that there is no evidence in the case that any note or memorandum in writing of the contract alleged in the complaint, was ever subscribed by the defendants.

2. It remains to determine whether the evidence tends to show such an acceptance of the sugar, by the plaintiffs, as will satisfy the statute and save the contract. The learned counsel for the plaintiffs maintain that the acceptance required by the statute is not necessarily one which will consummate the contract by vesting the purchaser with the ownership of the goods; but that, if the goods are delivered by the seller to the purchaser as and for a compliance with the parol contract, and are received by the latter, but are afterwards rejected by him and returned to the buyer because they are not of the kind or quality contracted for, that is an acceptance within the meaning of the statute, and renders valid the parol contract, which otherwise would have been void.

On the other hand, the learned counsel for the defendants claim that the acceptance contemplated by the statute must be evidenced by some unequivocal act of the purchaser, beyond the mere receiving of the goods for examination — by some act of ownership of the goods. For a statement of their position, they quote from the opinion by WRIGHT, J., in *Shindler v. Houston*, 1 Comst., 269, the following language, which relates to this question of the character of the acceptance required by the statute: "The best considered cases hold that there must be a vesting of the possession of the goods in the vendee as absolute owner, discharged of all lien for the price on the part of the vendor, and an ultimate acceptance and receiving of the property by the vendee, so significant that he shall have precluded himself from taking any exception to the quantum or quality of the goods sold."

These opposing positions were argued with much ability by

the respective counsel, and in their briefs they cite numerous cases on the subject.    There is much apparent conflict in these cases, and any attempt to reconcile them seems hopeless.    To review here any considerable number of them would extend this opinion to an unreasonable length, without serving any useful purpose.    It must suffice to say, that we have examined the cases as fully as the time at our disposal for that purpose would permit, and we are satisfied that the conclusions we have reached are sustained by the better reasons, as well as by the weight of authority.

In the present case, there was a delivery of the sugar by the defendants, and a receiving of it by the plaintiffs.  Also, it may fairly be assumed, the latter received the sugar with the intention of retaining it if it should prove equal in quality to the April lot.    But such delivery and receipt did not constitute the plaintiffs the owners of the sugar — did not transfer the title to them.    This could only be done by some unequivocal act of ownership on their part; and the evidence fails to show any such act.

We are thus brought to the question, Can any act of the purchaser of goods by a parol contract, otherwise void by the statute of frauds, amount to an acceptance of the goods which will satisfy the statute and save the contract, unless, by such act, the title to the goods becomes vested in the purchaser? We think the question must be answered in the negative.    To hold otherwise would be to hold that the words "accept" and "receive," as used in the statute, are synonymous.    That construction of the statute is rejected by many of the best considered cases, and by the best elementary writers on the subject; and to adopt it would be to perpetuate the evils which the statute was designed to remedy.

Prof. Parsons says: "The buyer has a right to examine the goods, and ascertain their quality, before he determines whether to accept or not; and a retention by him for a time sufficient for this examination, and no more, is not an acceptance."

Mr. Benjamin quotes approvingly from Blackburn on Sales, 22, 23, the following passage: " When the seller gives to the buyer the actual control of the goods, and the buyer accepts such control, he has actually received them. Such a receipt is often evidence of an acceptance, but it is not the same thing. Indeed, the receipt by the buyer may be, and often is, for the express purpose of seeing whether he will accept or not." These learned authors were there considering the provision of the statute now under consideration. See 3 Parsons on Con. (6th ed.), 44; Benjamin on Sales, § 140, and cases cited.

It is true that acceptance by the buyer may be inferred from a variety of acts on his part. Mr. Benjamin says: " Constructive acceptance by the buyer may properly be inferred by the jury when he deals with the goods as owner, when he does an act which he has authority to do as owner, but not otherwise; " and he quotes the language of Erle, J., in *Parker v. Wallis*, 5 E. & B., 21, as follows: " If the vendee does any act to the goods, of wrong if he is not the owner of the goods, and of right if he is the owner of the goods, the doing of that act is evidence that he has accepted them " (§ 145).

In this case it is manifest that the plaintiffs received the sugar for the express purpose of seeing whether they would accept it or not, holding themselves free to accept or reject; that they refused to accept; and that they did no act in respect to the sugar inconsistent with the continued ownership of the defendants. They insured the consignment and paid the freight in the belief that the sugar consigned was equal in quality to the April lot. Had it been equal thereto, perhaps these would have been acts of ownership; but they cannot reasonably be said to be acts of ownership of sugar inferior in quality to that which they had ordered or contracted for, and which they supposed had been shipped to them. Neither was the plaintiffs' consent that Mr. Brewster might sell the sugar to other parties, an act of ownership on their part. Such consent was implied in their refusal to accept the sugar, and,

whether express or implied, was the opposite of an act of ownership. The act was a repudiation of any ownership in the plaintiffs. And were this doubtful, the doubt is removed by the fact, testified to by one of the plaintiffs, and not denied, that Mr. Brewster resold the sugar at a higher price than the plaintiffs were to pay for it, and offered to pay them the difference, but they declined to receive it or to have anything to do with the resale.

The case of *Smith v. Stoller*, 26 Wis., 671, has a more direct bearing upon the general question under consideration than any other decided by this court. It was there held that, " where tea, valued at more than fifty dollars, was sold by sample, and a chest of it delivered to the buyer as in pursuance of the contract, which, after opening it, he undertook to return, it was not error to instruct the jury, in substance, that if he received the tea with intent to accept it in case it should agree with the sample, and if they found that it did in fact agree with the sample, then there was a complete acceptance, and he was liable for the price." The intention of the buyer to accept if the goods agreed with the sample, concurring with the fact that they did so agree, was held to constitute a complete acceptance. But had the jury found that the tea delivered was not as good as the sample, the plaintiff — the seller — would have been defeated in the action, on the ground that there was no acceptance sufficient to take the contract out of the statute. Of course, the result would have been the same — that is, the action would have been defeated, — had the buyer sued to recover damages for a breach of the alleged contract by not delivering tea which agreed with the sample.

*Smith v. Stoller* is, doubtless, an advance from many of the old cases in the direction of the doctrine maintained by counsel for the plaintiffs. But we think it goes as far as the courts can safely go to sustain a constructive acceptance of goods delivered under a parol contract of sale otherwise void by the statute of frauds. We do not perceive how we can go

farther in that direction, without disregarding the language of the statute and the purposes for which it was enacted.

In the present case, the learned county judge went far beyond the rule of *Smith v. Stoller*. As we understand his charge, he instructed the jury that if the defendants undertook to comply with the void contract, and shipped the goods to plaintiffs pursuant thereto, and the plaintiffs received the goods with the intention of accepting them, the contract was thereby taken out of the statute of frauds; and he added that, · in such case, he " does not understand that there must be such an acceptance of the goods as would bind the parties receiving them." There is nothing in the testimony from which it can properly be inferred that the plaintiffs ever intended to accept the sugar, unless it should be of the quality which they claim to have purchased. On the contrary, the conclusion is irresistible that they intended to accept it if as good as the April lot, and to reject it if inferior thereto.

Had the jury been instructed that, if they found the plaintiffs intended to keep the sugar if it proved to be as good as the April lot, then, if it was as good as the April lot, the receipt of it by the plaintiffs was a complete acceptance, which took the contract out of the statute, the instruction would be sustained by *Smith v. Stoller*. But such an instruction would have been fatal to the plaintiffs' case, no matter how the jury might have determined the question of fact. They could not have found a valid contract, unless they found the defendants had complied with its terms, which would defeat the action. Failing to find a valid contract, there was no breach of contract, and consequently no damages could be awarded against the defendants.

We have assumed, for the purposes of the case, that Mr. Brewster had authority from the defendants to make the contract, as to the quality of the sugar, which the jury found that he made. His authority to do so was denied on the argument, but we do not find it necessary to determine the point.

It follows from the foregoing views, that the verdict is against all of the evidence in the case, and hence, that the motion for a new trial should have been granted.

3. There is another view which may be taken of the case, which leads to the same result. If Mr. Brewster acted as a broker in the transaction, in the sense in which that term is employed in the law merchant (and he probably did so act), then, although first employed by the defendants, when the plaintiffs treated with him in respect to the purchase, he became their agent also. Being the agent of both parties, had he made an entry in his books containing the terms of the contract, his signature thereto would satisfy the statute of frauds, it being the signature of the lawful agent of both parties. R. S., ch. 107, sec. 8. It does not appear that any such entry was made. In the absence of such an entry, had he delivered the usual bought and sold notes to the respective parties, signed by him, if they agreed with each other and were received by the parties without objection, that would have been a compliance with the statute. The broker's telegram to the defendants may be considered a sufficient sold note; but no bought note was delivered to the plaintiffs. Let it be assumed, however (which is most favorable to the plaintiffs), that the broker delivered to them a bought note containing the contract alleged in the complaint and found by the jury. Then we have a case of material variance between the two notes, the one specifying the standard only of the sugar sold, and the other specifying not only the standard, but the specific quality or grade of the sugar purchased.

In a case where the validity of a contract made through a broker depends upon the bought and sold notes, it is well settled that, if there is any material variance between them, they are both nullities, and there is no binding contract. This whole subject is discussed, and the authorities relating to it reviewed, by Mr. Benjamin in his treatise on Sales, §§ 278 et.

seq. See, also, 1 Pars. on Con. (6th ed.), 541, book III, ch. IV, sec. VII.

In any view we have been able to take of this case, we think the undisputed evidence shows that there was no valid contract between the parties for the purchase and sale of the sugar, and hence, that the judgment against the defendants for damages for the breach of such a contract cannot be sustained.

*By the Court.*— The judgment of the county court is reversed, and the cause remanded for a new trial.