Hillsborough,
Feb. 5, 1929.

BENJAMIN GREEN & a. v. CHARLES M. McCORMACK.

510

*Frederic E. St. Cyr* (by brief and orally), for the plaintiffs.

*James A. Broderick* (by brief and orally), for the defendant.

SNOW, J. The defendant's motion for a nonsuit is based upon the claimed unenforceability of the alleged contract for want of compliance with the requirements of the statute of frauds. The plaintiffs rely upon the broker's memorandum of sale as a sufficient compliance with the third of the three alternative requisites by which the non-enforceability of a verbal contract may be overcome, to wit: "some note or memorandum in writing of the contract or sale . . . signed by the party to be charged or his agent in that behalf." P. L., c. 166, s. 4. The issue involves (1) the validity and proof of brokers' notes as memoranda under the statute and (2) the sufficiency of the evidence of the broker's authority to sign the same for this defendant.

1. The sufficiency, as well as the essentials and manner of proof, of brokers' notes as memoranda under the statute is well established by the authorities. "The customary authority of brokers is for the most part so well settled, as to be no longer a question of fact dependent upon evidence of usage, but a constituent part of that branch of the common law known as law-merchant, or the custom of merchants." Benj., Sales (6th *ed.*) 320. The law merchant is a part of our common law of contracts for the sale of goods. P. L., c. 166, s. 73. When a broker has succeeded in making a contract he usually delivers to each party written notes containing the terms, which are more commonly called bought and sold notes. Benj., Sales, 321.

The defendant's contention that it is of controlling importance that the broker was first employed by the plaintiffs is without merit. "At the outset the broker is the agent of the party who first employed him, but he becomes the agent of the other also, when the latter instructs him to close the bargain. . . . When so authorized he has, like other agents, implied authority to do whatever is necessary and proper to carry his authority into effect, including herein the signing of the necessary memorandum." 1 Mechem, Sales, s. 464; *Coddington* v. *Goddard*, 16 Gray 436, 445. "If . . . one party to a contract of sale employ a broker, and the other party treat with the broker and enter into a contract with him, knowing him to be acting as a broker, he does by that very act apparently confer on him authority to bind

the contract in the manner in which brokers do usually bind it." Benj., Sales, 320; *Bacon* v. *Eccles*, 43 Wis. 227, 241. As soon as the terms of the oral contract are settled, the broker has the authority of both parties to make and sign a memorandum thereof. Benj., Sales, 336; Story, Sales, *s.* 87; *Hinckley* v. *Arey*, 27 Me. 362, 364; *Remick* v. *Sandford*, 118 Mass. 102, 107; *Hobart* v. *Lubarsky*, 215 Mass. 528.

The statute presupposes a verbal contract (*Jacobson* v. *Perman*, 238 Mass. 445), and is satisfied if the required memorandum states only its essential terms, including the names of the parties, the subject matter and the price. 1 Mechem, Sales, *ss.* 433, 467; Browne, Stat. of Frauds (5th *ed.*), *s.* 251a; *Carter* v. *Company*, 184 Mo. App. 523, 528; *Kinney* v. *Horwitz*, 93 Conn. 211. See *Sabre* v. *Smith*, 62 N. H. 663, 664.

"It is clearly settled that the bought and sold notes together constitute a binding memorandum, though the broker make no entry in his book." Browne, Stat. of Frauds, *s.* 351; Story, Sales, *s.* 87; *Goom* v. *Aflalo*, 6 B & C 117; *Hawes* v. *Forster*, 1 Moo. & R. 368; *Butler* v. *Thomson*, 92 U. S. 412; *Bibb* v. *Allen*, 149 U. S. 481, 495, 496; *Roach* v. *Lane*, 226 Mass. 598; *Kinney* v. *Horwitz, supra.*

"It is usually sufficient for a party suing to put in evidence only one of the notes." Benj., Sales, 324; *Greeley-Burnham Co.* v. *Capen*, 23 Mo. App. 301. "If either the bought or the sold note alone be produced, the other will be presumed to correspond with it, in the absence of evidence to the contrary." Browne, Stat. of Frauds, *s.* 351; Benj., Sales, *s.* 337. "The presumption was that the bought and sold notes did not vary; and that if they did, it was for the defendant to prove the variance." Benj., Sales, 330; *Parton* v. *Crofts*, 16 C. B. (N. s.) 11. It is sufficient if the plaintiff produces the note received by him from the broker and shows the employment of the latter by the defendant. *Hawes* v. *Forster*, 1 Moo. & R. 368.

The plaintiffs' copy of the broker's note here in evidence contains the necessary essentials and is sufficient evidence of a compliance with the statutory requisite, provided the broker's authority is otherwise established.

2. The only doubtful question presented is the sufficiency of the evidence to support the implied finding of the court that the defendant closed the bargain through Leeman-Callahan Co. and thereby authorized the broker to sign a binding memorandum thereof.

To be sure there is no direct evidence of the fact. The broker's memorandum, though admitted in evidence without objection, does not prove the authority of the broker to execute it. Although agency may not be thus proven by the admission of the agent, his acts may

constitute links in a chain of circumstances from which such agency may be inferred. Had the broker, produced as a witness, testified to forwarding the duplicate memorandum to the defendant, the latter's telegram and subsequent silence would have been persuasive evidence of the defendant's admission of the purchase and of the broker's agency. *Newberry* v. *Wall*, 84 N. Y. 576, 581, 582. While this desirable link in the chain of circumstances is wanting, the record nevertheless discloses a situation in view of which the defendant's attesting act and conduct, though less persuasive, are not without force.

The plaintiffs employed the broker to sell the car of potatoes to the defendant and, as a consequence, received from them a memorandum of sale in accepted form, designed to record a sale to the defendant consummated by telephone, and purporting to be identical with a like memorandum simultaneously sent to the defendant. Pursuant to its terms shipment was made by the plaintiffs, and draft with bill of lading forwarded with instructions to notify the defendant. After the expiration of the requisite period for the arrival of the car, and for the receipt by the defendant of the notice of the draft and bill of lading, the latter undertook to cancel the order by a telegram addressed to the plaintiffs, giving as his sole excuse "cannot use." The market price in the interim had dropped one dollar per bushel. One of the plaintiffs then visited the defendant, who refused to speak to him. At the trial where the issue was upon the defendant's wrongful refusal to accept the potatoes, the defendant was confronted with plaintiffs' testimony of the claimed sale to him through the broker, together with the broker's memorandum thereof. He made no testimonial denial, and presented no evidence to meet any inferences which might be drawn from these proven facts, relying solely upon a motion for a nonsuit. He is, therefore, not in a position to complain if conclusions adverse to him are reached upon less satisfactory evidence.

. Even if the telegram might be construed to be a denial of liability, it does not necessarily follow that it might not evidence such an admission of the making of the contract and of the memorandum as would take it out of the statute. Browne, Stat. of Frauds, s. 354a; *Bailey* v. *Sweeting*, 9 C. B. (N. s.) 843, 857, 861; *Wilkinson* v. *Evans*, L. R., 1 C. P. 407, 410; *Heideman* v. *Wolfstein*, 12 Mo. App. 366, 369; *Greeley-Burnham Co.* v. *Capen*, 23 Mo. App. 301, 304, 305.

The terms of the telegram in view of the proven happenings are significant. The foisting on the defendant of an unauthorized car load of potatoes would naturally have prompted a denial of an order,

a refusal to receive and a request for an explanation. Instead of a denial he wired the plaintiffs a notice to "cancel car potatoes," which, given its common undeleted signification, would ordinarily be understood to mean "cancel my order for a car load of potatoes." Instead of calling for an explanation for an unauthorized shipment, he offered an explanation for not receiving the potatoes, namely, "cannot use." In other words, a situation which called for some act of repudiation was met by an implied admission and avoidance. The defendant's conduct was consistent only with a knowledge that the shipment was to be made. It is but a fair deduction from the telegram that he had in some manner authorized it. As he had no direct communications with the plaintiffs, it is a fair inference that such authorization had been through the broker by whose hands alone the order had come to the plaintiffs. If so, it is also fair to assume that he duly received and had before him a copy of the memorandum of sale. The defendant did not choose to meet, by denial or explanation, the inferences which were logically to be drawn from his telegram, and from his refusal to speak to one of the plaintiffs who called on him August 16 or 17 to discuss the situation.

The uncontradicted and unexplained act and conduct of the defendant, under the circumstances proved, constituted competent and sufficient evidence to support the implied findings that he entered into the parol contract of sale through the broker, and thus authorized it to make and sign the necessary memorandum to make the sale effective.

*Judgment on the verdict.*

All concurred.