JESSE F. PADDLEFORD *vs.* LANE AND COMPANY, INCORPORATED.

Suffolk. November 30, 1915. — March 1, 1916.

Present: RUGG, C. J., LORING, DE COURCY, CROSBY, & CARROLL, JJ.

*Sale,* Vendee's right of inspection. *Bill of Lading. Carrier,* Of goods. *Practice, Civil,* Judge's charge, Requests and instructions. *Evidence,* Foreign law.

If a dealer in the State of New York consigns cabbages, which he has sold to a merchant in Boston, to himself in Boston with directions to the carrier to

"notify" the Boston merchant, indorses the bill of lading in blank, attaches it to a draft upon the Boston merchant for the purchase money and transfers both the bill of lading and the draft through a local bank to a Boston bank for collection, the Boston merchant is a stranger to the shipment and, until he has paid the draft and has become an indorsee of the bill of lading, he has no right to inspect the cabbages and the carrier has no right to permit him to do so.

If, at the trial of an action of contract for the purchase price of cabbages sold by the plaintiff in the State of New York to the defendant in Boston, there is evidence that a condition of the sale was that the defendant should have a right to inspect the cabbages after their arrival in Boston before he should become liable for the purchase price, and it appears that the method of shipment adopted by the plaintiff gave the defendant no right to inspect and the carrier no right to permit an inspection until the defendant had paid a draft drawn upon him for the purchase price, and that before inspection by the defendant was permitted the cabbages had so deteriorated that the defendant refused to accept them, the presiding judge should charge the jury that, if they found that by the contract of sale the defendant was given the right to inspect, the defendant's refusal of the cabbages under the circumstances was justified, and it is improper for the presiding judge in his charge to make such justification conditional upon the defendant having seasonably asked the plaintiff for permission to inspect.

The foregoing rule of law is the same, whether the right of inspection in the vendee was a condition precedent to the passing of the property to the vendee or was a condition subsequent enabling the defendant to rescind the sale if on inspection the cabbages were found not to be what the contract called for.

Where, at a trial before a jury, the law of another State is an issue and a part of the evidence introduced upon the subject consists of a report of a decision of the highest law court of such State, it is improper for the presiding judge to instruct the jury as to what is the rule of law established by that decision. The meaning of the decision is a question of fact to be determined by the jury.

At the trial of an action of contract for the purchase price of cabbages, the judge in his charge described the contract as one for a sale of "Danish cabbage." It appeared that on a certain day the plaintiff offered by letter to sell to the defendant "fine stock" cabbages, that on the next day by telegram he offered to sell "Danish cabbage," and that the defendant telegraphed, "Letter received ship . . . cabbage offered." *Held,* that the contract between the parties was for a sale of "fine stock" cabbages and came within the rules of law applicable to contracts for the sale of goods of "a specific quality," and that the judge made a material error in his charge.

LORING, J. The plaintiff, living in Sherburne, New York, offered to sell to the defendant, doing business in Boston, two carloads of "fine stock" cabbages at $10 a ton, and the offer was accepted by the defendant. The cabbages were shipped at Sherburne on March 31 and April 1. They arrived in Boston on April 5. They were inspected by the defendant on April 20. They were then in a poor condition, the defendant refused to accept them, and they were sold by the railroad company to pay its charges. They brought $51.95. Its charges were $127.17. The balance, amount-

ing to $75.22, was then paid by the plaintiff, and this action was brought against the defendant to recover the price of the cabbages and the balance of freight charges paid by the plaintiff.*

There was a conflict between the stories told by the plaintiff and the defendant as to what transpired between April 5, when the cars arrived in Boston, and April 20, when they were inspected. The plaintiff's story was that after the shipment of the cabbages he heard nothing about them until April 15; that what he heard on April 15 he heard not from the defendant but from the agent of the railroad at Sherburne; that on that day the agent of the railroad at Sherburne told him (the plaintiff) that he (the railroad agent at Sherburne) had received a telegram from the Boston and Maine Railroad at Boston, dated April 13, to the effect that the defendant had asked for inspection of the cabbages and refused to take the cars because inspection was not allowed; that on receiving this notice from the agent of the railroad at Sherburne he telegraphed to the defendant that the Boston and Maine Railroad agent "reports last two cars cabbage shipped you refused. Is this the case, and, if so, for what reason answer quick;" and that he received from the defendant in answer to this telegram a message which we interpret to be that the bill of lading of neither car allowed inspection, and that the railroad required the defendant to get permission from the plaintiff before they would allow the defendant to make an inspection. The defendant's story (told through its president) was that under the bill of lading under which the cabbages had been shipped he had no right to inspect them and that he so telegraphed the plaintiff on April 6; to this he got no answer; that he again telegraphed the plaintiff on April 11, asking the plaintiff to "Wire railroad allow us inspection of cars cabbage;" that the first notice he received allowing him to inspect them was on April 20; that he inspected them on the same day and, finding that they were in bad condition, refused to accept them.

The defendant contends that both as mattter of law and as matter of contract it had a right to inspect the cabbages "before the drafts on the cabbages were paid;" that the plaintiff was bound to ship them in such a way that it would have this right of

---

* The case was tried before *Hitchcock*, J. The jury found for the plaintiff in the sum of $375.41; and the defendant alleged exceptions.

inspection; that the plaintiff shipped them in such a way that (1) it (the defendant) did not have a right of inspection, and in such a way that (2) the railroad did not have the right to allow it (the defendant) to inspect the contents of the cars before paying the drafts, and therefore it was of no consequence whether the defendant was or was not active in trying to get a right to inspect the cabbages between April 5 and April 20.

In this connection the presiding judge in substance told the jury that if the defendant had a right under its contract to inspect the cabbages for the purpose of determining whether they did or did not comply with the terms of the contract, and if the defendant made a request to be allowed to inspect the cabbages within a reasonable time and that right [the right to inspect] was denied by the plaintiff and the denial of the right caused deterioration in the condition of the cabbages so that they became damaged, the defendant would not be obliged to take the cabbages if this delay was due to the plaintiff.

The defendant took an exception to this part of the charge on the ground that the judge had told the jury "that the defendant was obliged to request the plaintiff to give an opportunity to inspect," his contention being, as he stated, "that it was up to the plaintiff to ship them in such a way that we could have inspected them without any request on the part of the defendant."

The plaintiff consigned the cabbages to himself at Boston, indorsed the bills of lading in blank, attached them to drafts on the defendant for the purchase money and transferred both to a Sherburne bank which sent them forward to a bank in Boston. Under those bills of lading the defendant was a stranger to the shipment. It had no right to inspect the cabbages and the railroad had no right to allow it to inspect them. The plaintiff directed the railroad to "notify" the defendant, but he did not direct it (as he might have done) to allow the defendant to inspect the contents of the cars before they secured a right to do so by becoming indorsees of the bills of lading on payment of the drafts. See *South Deerfield Onion Storage Co.* v. *New York, New Haven, & Hartford Railroad*, 222 Mass. 535. The president of the defendant corporation testified that there had been many previous dealings in cabbages between the plaintiff and the defendant and "that in all of his previous dealings with Paddleford

that inspection was permitted by the railroad company before the drafts on the cabbages were paid. . . . That there was a custom in relation to the purchase of cabbages in the trade. That the custom was to allow the buyer to examine cabbages shipped as these were whether any express agreement was made to that effect or not."

If the jury found that under the contract the defendant had a right to inspect the cabbages before paying the drafts, any loss coming from deterioration caused by the cabbages having been shipped by the plaintiff in such a way that the defendant could not inspect them ought to fall on the plaintiff. In place of giving the jury an instruction to that effect the presiding judge told them that the loss would fall on the plaintiff only if the defendant made a request within a reasonable time to be allowed to make an inspection and that right was denied by the plaintiff. The exception to this ruling must be sustained.

We add (to avoid misunderstanding) that in the case at bar as in *Alden* v. *Hart,* 161 Mass. 576, it is immaterial whether the right of inspection was a condition precedent to the property in the cabbages passing to the defendant or was a condition subsequent enabling the defendant to rescind if on inspection the cabbages were found not to be what the contract called for. See also *Putnam-Hooker Co.* v. *Hewins,* 204 Mass. 426, 430; *Hanson & Parker, Ltd.* v. *Wittenberg,* 205 Mass. 319, 328; Williston on Sales, (2d ed.) 473, 474.

In addition to the ruling involved in the exception which we have sustained the presiding judge was wrong in two matters which ought to be noticed in connection with the new trial which will have to take place.

Both parties have assumed that the contract between the plaintiff and the defendant was to be governed by the law of New York and not by the law of Massachusetts, and both parties introduced evidence on that point. The defendant put in evidence the case of *Pierson* v. *Crooks,* 115 N. Y. 539. In his charge to the jury the presiding judge told them what the rule of law was which that case established. But if there was a question upon that point it was a question to be decided by the jury not by the judge. It is enough upon that point to refer to *Electric Welding Co. Ltd.* v. *Prince,* 200 Mass. 386.

In addition the judge was wrong in assuming that the contract between the plaintiff and the defendant was a contract for the delivery of "Danish cabbage." This was or may have been of importance because the judge told the jury (and apart from his charge it could have been found by them) that *Pierson* v. *Crooks, ubi supra,* did not apply to a case where the goods to be shipped were not goods of a "specific quality." The contract between the plaintiff and defendant was a contract for "fine stock" cabbages not for "Danish cabbage" as the presiding judge assumed. On May 22, 1911, the plaintiff in a letter wrote the defendant: "Offer you 2 cars next week's shipment fine stock @ $10." On the next day (March 23, 1911) the plaintiff telegraphed to the defendant: "Offer 2 cars Danish Cabbage @ $10. per T. f. o. b. Sherburne." The despatch signed by the defendant in which he accepted the plaintiff's offer was in these words: "Letter received ship two cars cabbage offered." It is plain therefore that the offer which the defendant accepted was the offer contained in the letter and not that contained in the telegram. Indeed there is a statement to that effect in the bill of exceptions. From this it follows that the contract between the parties was for the delivery of "fine stock" cabbages and not for "Danish cabbage." It might have been found, therefore, that the contract in the case at bar was a contract for goods of "a specific quality" and so within the decision in *Pierson* v. *Crooks* in case the jury found that the rule laid down in that case was limited to contracts of that kind.

The entry must be

*Exceptions sustained.*

The case was submitted on briefs.

*J. P. Fagan,* for the defendant.

*G. V. Phipps, F. Durgin & R. A. B. Cook,* for the plaintiff.