F. S. ROYSTER GUANO COMPANY *vs.* OSCAR COLE.

Waldo.   Opinion November 15, 1916.

*Public Laws of Maine, 1911, Chapter 152, relating to foreign corporations,
interpreted. Rule of law where the Statutes of any State con-
flict with or impair the right to regulate commerce
under Constitution of United States.*

1. The Constitution of the United States gave to Congress the power to
regulate commerce with foreign nations, and among the several states, and
with the Indian tribes.
2. The power so given to Congress to regulate interstate commerce is
exclusive as to all matters that admit of and require uniformity of
regulation affecting alike all the states.
3. State legislation, except in matters of local concern only, which imposes
a direct burden on interstate commerce or interferes directly with its
freedom, is invalid because it encroaches upon the exclusive power of
Congress to regulate interstate commerce.
4. A contract of sale of merchandise between citizens of different states
which contemplates the transportation of such merchandise from one
state to another is a transaction of interstate commerce.
5. Where a traveling salesman of the plaintiff, a foreign corporation
having its place of business in Baltimore, Maryland, but having no place
of business in Maine, took from the defendant, a citizen of Maine, an
order for 25 tons of fertilizer, for his own use, and the order was sent to
and approved by the plaintiff, and the fertilizer was shipped by it from
Baltimore to the defendant at Winterport, Maine, and received and
accepted by him, such transaction is clearly interstate commerce.
6. If it be a fact that the plaintiff was also engaged in intrastate business in
this State, that fact could not change the character of its transaction with
the defendant.
7. Every citizen of the United States is entitled under the Constitution to
carry on interstate commerce without having the same materially or
directly burdened by State regulation.
8. The provisions of chapter 152, Public Laws, 1911, requiring all foreign
corporations, with some exceptions, before doing business in this State, to
file with the secretary of state its appointment of a resident of the State
its attorney upon whom all processes against it may be served and pay
therefore a fee of ten dollars, also to file with the secretary of state, upon
payment of an additional fee of ten dollars, a copy of its charter, articles

of or certificate of incorporation, a copy of its by-laws, and a certificate setting forth its name, the location of its principal office, the names and addresses of its officers and directors, the amount of its capital stock authorized and issued, the date of its annual meeting, etc., and making its officers and directors subject to penalties and liabilities for failure to comply with the requirements, and also stipulating that no action shall be maintained in any of the courts of this State by any such foreign corporation, so long as it fails to comply with the requirements, is materially and directly burdensome to interstate commerce, and therefore repugnant to the commerce clause of the Constitution.

9. The plaintiff's failure to comply with the requirements of chapter 152, Public Laws of 1911 does not preclude it maintaining this action to enforce its contractual rights directly arising out of and connected with interstate commerce.

Action of assumpsit, with account annexed and money counts, to recover the purchase price of twenty-five tons of fertilizer sold and delivered to defendant. Defendant pleaded general issue and brief statement, setting forth that the plaintiff was a foreign corporation and had not complied with the laws of the State of Maine relative to foreign corporations doing business in this State. Case reported to Law Court upon agreed statement for final determination. Judgment for plaintiff for $862.50 with interest from date of writ.

Case stated in opinion.

*Walter A. Cowan,* for plaintiff.

*Ellery Bowden,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHIL-BROOK, JJ.

KING, J. By chapter 152, Public Laws of 1911 every foreign corporation, with some exceptions not material here, which has a usual place of business in this State or which is engaged in business in this State permanently or temporarily without a usual place of business therein, is required, before doing business in this State, to appoint a resident of the State its attorney upon whom all lawful processes against it may be served, and to file such appointment in the office of the secretary of State and pay therefor a fee

of $10. The Act further requires every such corporation before transacting business in this state, upon payment of an additional fee of $10, to file with the secretary of State a copy of its charter, articles of or certificate of incorporation, a copy of its by-laws, and a certificate setting forth its name, the location of its principal office, the names and addresses of its officers and directors, the date of its annual meeting, the amount of its capital stock authorized and issued, the number and par value of its shares and the amount paid thereon to its treasurer. The officers and directors are made subject to penalties and liabilities for false and fraudulent statements and returns and for failure to comply with the requirements of the Act, and it is also stipulated therein that such failure shall not affect the validity of any contract with such corporation, "but no action shall be maintained or recovery had in any of the courts of this State by any such foreign corporation so long as it fails to comply with the requirements of said sections."

The plaintiff is a foreign corporation engaged in the manufacture and sale of fertilizers, having an office in Baltimore, Maryland, but it has no manufacturing plant or office in this State.

This action comes up on report. It was brought in the Supreme Judicial Court for Waldo county, and the plaintiff therein seeks to recover $862.50 as the purchase price of 25 tons of fertilizer sold and delivered by it to the defendant, a resident of Winterport in said county.

The plea is the general issue with brief statement alleging that the plaintiff had not complied with the requirements of chap. 152 of the Public Laws of 1911.

It is urged that non-compliance by the plaintiff with the requirements of the statute can only be taken advantage of by plea in abatement. We will, however, for the purposes of this case, assume otherwise, and come directly to the question whether the plaintiff's failure to comply with the statute prevents it maintaining this action. There are certain principles, now well established by controlling decisions, which will, we think, guide us readily to a proper determination of the question here involved.

The Constitution of the United States gave to Congress the power to regulate commerce with foreign nations and among the several states, and with the Indian tribes. And it may be safely

said that it is the settled doctrine that the power so given to Congress to regulate interstate commerce is exclusive as to all matters that admit of and require uniformity of regulation affecting alike all the states, and that state legislation, except in matters of local concern only, which imposes a direct burden on interstate commerce or interferes directly with its freedom, is invalid because it encroaches upon such exclusive power of Congress. This doctrine has been so often and uniformly stated in the decisions of both the federal and state courts that the citation of authorities in its support seems unnecessary. We will, however, refer to the quite recent decision in *Sioux Remedy Co.* v. *Cope,* 235 U. S., 197, where the court said: "Through a long series of decisions dealing with the scope and effect of the commerce clause it has come to be well settled that a state while possessing power to adopt reasonable measures to promote and protect the health, safety, morals, and welfare of its people, even though interstate commerce be incidentally or indirectly affected, has no power to exclude from its limits foreign corporations or others engaged in interstate commerce, or, by the imposition of conditions, to fetter their right to carry on such commerce, or to subject them in respect to their transactions therein to requirements which are unreasonable or pass beyond the bounds of suitable local protection."

It is plain, therefore, that the correct determination of this case requires something more than merely ascertaining if the plaintiff was "doing business in this State." The fundamental inquiries here are, first, did the plaintiff's cause of action arise out of an interstate commerce transaction or out of an intrastate transaction? and, second, do the requirements of the State statute invoked, when applied to this case, materially or directly burden interstate commerce?

It has been said that the word "commerce" as used in the Constitution is a term of the largest import, and not susceptible to exact and comprehensive definition. Judge Sanborn, in *Butler Bros. Shoe Co.* v. *United States Rubber Co.,* 156 Fed., 1, 17, said: "Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation, whether of goods, per-

sons or information, is a transaction of interstate commerce." Certainly it is beyond question that a contract of sale of merchandise between citizens of different states which contemplates the transportation of such mechandise from one state into another is a transaction of interstate commerce.

From the report, and the briefs of counsel, we find, that on April 8, 1915, the defendant signed a written order directed to the plaintiff for the fertilizer. It was for his own use as a consumer, and was to be paid for by him in December following. The order was taken by the plaintiff's traveling salesman in Maine, one A. J. Clark, of Bangor. Mr. Clark sent the order, with a property statement signed by the defendant, to the plaintiff at its office in Baltimore for approval. The order was approved and the fertilizer was shipped by the plaintiff from Baltimore, Maryland, to the defendant at Winterport, Maine, and it was received and accepted by him. We can entertain no doubt that this was an interstate transaction. It was a contract of sale of merchandise by a corporation in Maryland to a citizen in Maine, which contract contemplated, what was in fact done, that the merchandise was to be shipped from the seller in one state to the purchaser in another state. Such a transaction is clearly interstate commerce. Nor was that transaction any the less interstate commerce because of the fact, offered in evidence by the defendant, that the larger part of the business of the plaintiff's traveling salesman was the taking of orders for its fertilizers from so called local agents in this State to be by them sold to consumers in their respective localities. With such local agents the plaintiff made written contracts, the import of which appears to be an agreement for the consignment of its fertilizers to such local agents for sale. But we are not called upon in this case to decide whether the transactions which the plaintiff had with its so called local agents constituted interstate commerce or only intrastate business. If it be a fact that the plaintiff was also engaged in intrastate business in this State, that fact of course could not change the character of its transaction with the defendant, which plainly was interstate commerce. The plaintiff may have been engaged in both an interstate and an intrastate business. And the principle to be kept in mind as the guide to the correct determination of this case, is.

that the plaintiff had the right to engage in its interstate commerce with the defendant without having the same materially or directly burdened by any state regulation. In *International Text-Book Co.* v. *Pigg,* 217 U. S., 91, 109, the court said: "To carry on interstate commerce is not a franchise or a privilege granted by the state; it is a right which every citizen of the United States is entitled to exercise under the Constitution and laws of the United States; and the accession of mere corporate facilities as a matter of convenience in carrying on their business, cannot have the effect of depriving them of such right, unless Congress should see fit to interpose some contrary regulation on the subject."

Do the requirements of chap. 152 of the Public Laws of 1911 impose a material or direct burden on the plaintiff's right to engage in interstate business? The question is a federal one and in its determination this court is controlled by the decisions of the Federal Supreme Court, so far as applicable. And there are recent decisions of that court which hold that particular state statutes and regulations, found to be similar in all material respects to the statute here invoked, do impose material and direct burdens on interstate commerce. In *International Text-Book Co.* v. *Pigg,* supra, the Supreme Court of the United States had before it the question, whether a Kansas statute, which imposed certain requirements upon foreign corporations, as a condition precedent to obtaining authority to do business in that state, was repugnant to the commerce clause of the Constitution as being an unlawful interference with interstate commerce. And the court held that the state statute was unconstitutional. The Kansas statute was very similar to our statute here invoked. It required such foreign corporations, among other things to file with the secretary of state a statement setting forth its authorized and paid up capital stock, the par and market value of its shares, the postoffice addresses of its share holders and the number of shares held and paid for by each, the names and postoffice addresses of its various officers and directors, etc. And like the Maine Act, the Kansas statute provided that "no action shall be maintained or recovery had in any of the courts of this state by any corporation doing business in this state without first obtaining the certificate of the secretary of state that state-

ments provided for in this section have been properly made." In that case the court, speaking by Mr. Justice Harlan, said:

"In other words, although the Text-book Company may have a valid contract with a citizen of Kansas, one directly arising out of and connected with its interstate business, the statute denies its right to invoke the authority of a Kansas court to enforce its provisions unless it does what we hold it was not, under the Constitution, bound to do; namely, make, deliver, and file with the secretary of state the statement required by § 1283. If the state could, under any circumstances, legally forbid its courts from taking jurisdiction of a suit brought by a corporation of another state, engaged in interstate business, upon a valid contract arising out of such business, and made with it by a citizen of Kansas, it could not impose on the company, as a condition of its authority to carry on its interstate business in Kansas, that it shall make, deliver, and file that statement with the secretary of state, and obtain his certificate that it had been properly made."

In *Buck Stove & Range Co.* v. *Vickers,* 226 U. S., 205, the decision in the Pigg case was expressly approved and followed.

A question in every way similar to the one involved in the case at bar, was before the Supreme Court in *Sioux Remedy Co.* v. *Cope,* 235 U. S., 197. In that case an action was brought in South Dakota by an Iowa corporation to recover the price of merchandise sold by the plaintiff to citizens of South Dakota and to be shipped into that state from Iowa. A plea was interposed by the defendants to the effect that the plaintiff had not complied with a statute of South Dakota prescribing certain conditions to be performed by corporations of other states before they could transact business in that state or maintain any action in the courts of that state. The conditions in the South Dakota statute were almost identical with those in the Maine statute, and included the filing in the office of the secretary of state an authenticated copy of its charter, or articles of incorporation, the appointment of a resident agent upon whom processes against the corporation could be served, and the filing of such appointment with the secretary of state, and the payment of the stipulated fees therefor. The court held, that as applied to the plaintiff's contractual rights directly arising out of and connected with interstate commerce, the conditions imposed

were unreasonable and burdensome, and therefore in conflict with the commerce clause of the Constitution.

In accordance with these controlling authorities our conclusion must be that the requirements of chapter 152 of the Public Laws of 1911 are materially and directly burdensome to interstate commerce, and therefore repugnant to the commerce clause of the Constitution. It follows, therefore that the plaintiff's failure to comply with those requirements does not preclude its recovery in. this action to enforce its contractual rights directly arising out of and connected with interstate commerce.

*Judgment for the plaintiff for*
*$862.50 with interest from*
*the date of the writ.*