## WILLIAM H. ROACH & another *vs.* JOHN J. LANE.

Suffolk.    April 2, 1917. — May 23, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Contract*, Construction, Performance and breach, Rescission. *Sale. Frauds, Statute of. Sales Act. Evidence*, Relevancy, Competency. *Agency*, Scope of authority. *Practice, Civil*, Requests and rulings, Judge's charge.

After an interview between a broker, acting for one desiring to sell potatoes, and a prospective buyer, the broker on the seller's behalf sent the following memorandum to the buyer: "We confirm sale to you of following cars of Green Mountains, delivered in Boston at 90c per bu. viz: 4 cars H. H. & A. Roach, Smyrna Mills." *Held*, that the contract was entire and indivisible.

The memorandum above described satisfied the requirements of the part of the statute of frauds contained in § 4, cl. 1 of the sales act, St. 1908, c. 237.

At the trial of an action by the seller against the buyer for a breach of the contract of sale above described, certain letters from the buyer to the broker following the date of the above memorandum and complaining as to non-delivery of the potatoes, in which the buyer wrote that he "purchased from you acting as broker for" the seller, are admissible to prove the authority of the broker to act for the seller.

At the trial of the action above described, it appeared that the bill of lading was attached to a draft upon the buyer and sent through a bank for collection, and that there was no provision in it for an inspection of the goods before payment of the draft and release of the bill of lading. There was evidence tending to show a custom giving to the buyer such a right of inspection in spite of the lack of such a provision in the bill of lading. The defendant contending that he was not allowed such inspection, the plaintiff, subject to an exception by the defendant, was allowed to introduce testimony of an employee of the carrier that there was a practice, in violation of a regulation of the carrier but unquestionably winked at or sanctioned by the carrier's employees, for surreptitious inspection of goods where bills of lading contained no provision allowing it before payment of the draft. *Held*, that the evidence was admitted properly.

If, at the trial of an action by a seller of goods against a buyer for breach of an entire contract of sale at a specified price, it appears that the goods were delivered and in all respects conformed to the requirements of the contract, the plantiff, in order to recover the contract price, does not need to prove that they were accepted by the defendant.

A broker who, acting for a seller, procures a sale of goods, to be delivered in another city upon payment of a draft attached to a bill of lading giving no precedent right of inspection, has no authority, in the absence of evidence showing specific authority so to do, to agree on the seller's behalf that, if, upon paying the draft and receiving delivery of the goods without inspection, the buyer finds them not in accordance with the contract, the seller will "make it right."

Where, under the contract above described, the buyer, upon receiving notice of the

arrival of one car load of the potatoes at the place of delivery, pays the draft and receives the bill of lading relating to that car, unloads and sacks the potatoes and then reships them by the same car to another city, the buyer, even if he discovers that there was a shortage in quantity of the potatoes and if there was a custom that the car loads should be paid for separately, has no right to treat the entire contract as broken by the seller.

Nor under such circumstances can he elect to rescind the contract because he has put it beyond his power to place the seller *in statu quo.*

Certain rulings asked for by the defendant at the trial of the action above described, relative to a custom as to protection by the seller of the buyer against loss by reason of the goods sold not complying with the requirements of the contract of sale, and the bearing of such custom upon the evidence, were *held* to have been given in substance in the charge.

CONTRACT for breach of a contract by the defendant to accept and pay for four car loads of potatoes. Writ dated May 19, 1913.

In the Superior Court the case was tried before *Hitchcock,* J. There was evidence that, after an interview between the defendant and Rupert E. McLatchy, a broker, the broker sent to the defendant on May 11, 1907, the following confirmation: "We confirm sale to you of following cars of Green Mountains, delivered in Boston at 90c per bu. viz: 4 cars H. H. .& A. Roach, Smyrna Mills."

On the previous day the broker had sent the following letter to the plaintiffs: "We confirm sale for you on four cars of Mountains at Ninety cents ($.90) delivered to Lane & Co., Boston. This is the top price on Mountains up to the present time. It looks as though the market would stay where it is for a few days, as we have been offered quite a few cars at this price from other shippers."

There was evidence that the four car loads of potatoes were shipped from Smyrna Mills, Maine, on May 10, 14, 16 and 18, 1907, respectively, and arrived in Boston on May 17, 20, 23 and 24, respectively. The defendant received notice from the railroad company of their arrival in Boston on May 18, 21, 23 and 24 respectively. On May 28, 1907, the defendant took up and paid the draft attached to the bill of lading for the second car. This car then was unloaded in the afternoon of May 29 and the potatoes in it were sacked and weighed and reshipped in the same car to New York City. There was evidence that, instead of there being five hundred and sixty bushels of potatoes in the car, as called for by the bill of lading, there were but five hundred and

four and one half bushels. There was evidence for the plaintiffs that, when shipped, the full amounts of potatoes called for by the bills of lading were in the cars, that the cars remained in the open freight yard in Boston for several days and that the natural shrinkage was about two per cent.

On June 1 the defendant wrote to the plaintiffs as follows: "We beg to inform you that the potatoes we purchased from you acting as broker for H. H. & A. Roach, Smyrna Mills, Me., as per your confirmation dated May 11, 1907, have not been delivered to us. We ask you to deliver or have the potatoes delivered to us on or before Tuesday, June 4, 1907, or we will consider our order cancelled. We want to be fair and believe we are allowing you plenty of time. Hoping you will give this matter your immediate attention, we remain."

On June 4 the defendant again wrote to the plaintiffs as follows: "We would again like to call your attention to the fact that the potatoes we purchased from you acting as broker for A. M. Leavitt Co., Smyrna Mills, Me., W. H. & A. Roach, Smyrna Mills, Me., and F. H. Craig, Smyrna Mills, Me., have not been delivered to us.

"We have already informed you in our letter to you of June 1st of this fact that we were willing to take the potatoes as agreed and asked you to have them delivered to us on or before Tuesday, June 4th, or this day.

"We are now ready to take the potatoes as per agreement and would ask you to deliver, or have them delivered to us. If not, we will consider the orders cancelled.

"Please let us know at once if the potatoes are to be delivered to us. If we are to have them we want to unload them at once."

It was one of the defendant's contentions, and there was evidence offered in support of it, that the defendant was not required under the custom of the trade to take up the plaintiffs' drafts on these cars without first inspecting the potatoes and satisfying himself that they were of the kind and quality which he purchased. There was evidence that under the bills of lading as they were in this case the defendant could not inspect said cars. To meet this contention the plaintiffs called on Henry E. Pilcher, who in 1907 was chief clerk for Boston and Maine Railroad, at the Rutherford Avenue Station, in charge of incoming freight, who testified,

subject to exceptions by the defendant, that the rule of the company then prohibited inspection unless it was provided for on the billing as well as the bill of lading, that "we knew that cars were being inspected surreptitiously every day, which was in violation of the railroad's regulations," that the company could do nothing and did nothing about it, and that the practice unquestionably was winked at or sanctioned by the company's employees.

There also was evidence that, when the alleged shortage was called to the plaintiffs' attention, they offered to make a deposit in a Boston bank of $50 per car to guarantee the defendant that the output of the cars would be the quantity as called for in the bills of lading. The defendant declined the offer.

The defendant did nothing more about the remaining three cars of potatoes, and the plaintiffs took possession of and sold them on June 3, 1907, for $1,124.02. The plaintiffs offered evidence tending to show that this was the best price obtainable for these potatoes in the Boston market.

Other evidence is described in the opinion.

At the close of the evidence the defendant asked for the following rulings, which, except as stated in the opinion, the judge refused:

"3. Upon all the evidence, the witness McLatchy was not by virtue of his being a broker authorized to bind the defendant by the memorandum of sale made by him.

"4. The memorandum of sale relied upon by the plaintiffs did not express the terms of the contract entered into by the defendant, and therefore cannot be relied upon as satisfying the requirements of the statute of frauds.

"5. The contract relied upon in this case was not an entire contract for the purchase of four cars of potatoes."

"7. It was the duty of the plaintiffs to ship the potatoes to the defendant within a reasonable time after the date of the contract.

"8. Upon all the evidence the plaintiffs failed to ship the four cars of potatoes within a reasonable time, and the defendant was not bound to accept the same.

"9. Upon all the evidence the plaintiffs failed to ship [the first] car . . . of potatoes within a reasonable time, and the defendant was not bound to accept the same.

"10. Upon all the evidence the plaintiffs failed to ship [the third] car . . . of potatoes within a reasonable time, and the defendant was not bound to accept the same.

"11. Upon all the evidence the plaintiffs failed to ship [the fourth] car . . . of potatoes within a reasonable time, and the defendant was not bound to accept the same."

"13. If the jury find that [the second] car . . . contained a substantial quantity less than that called for by the invoice and bill of lading, the delivery of such car was defective, and under the terms of the contract and the circumstances of the case, such defective delivery constituted a material breach of the contract which justified the defendant in refusing to proceed further with the contract.

"14. If the jury find that there was a custom by which dealers in potatoes when purchasing more than one car of potatoes finding one of the cars defective as to delivery, either by reason of quantity, quality or deterioration, were given the right to demand protection as to the remaining cars, before payment of the drafts on such remaining cars, such custom applied to this case, and under it the defendant was entitled to be protected against shortage in the remaining cars.

"15. If the jury find that there was a custom requiring the seller to give protection to the buyer, under the circumstances of this case the defendant was entitled thereunder to refuse to accept the [first, third and fourth] cars . . . until such protection had been given to him."

"17. If the jury find that one of the plaintiffs acting for himself and partner agreed with the defendant to deposit with the defendant as protection against shortage in [the first, third and fourth] cars . . . $50 per car, or any other sum, his failure to do so justified the defendant in refusing to accept said cars.

"18. If the jury find that the plaintiffs are entitled to recover damages, such damages are to be ascertained by taking the difference between the contract price and the market or current price at the time when the defendant ought to have accepted [the first, third and fourth] cars. . . .

"19. If the jury find that the plaintiffs are entitled to recover damages, such damages are to be ascertained by taking the difference between the contract price and the market or current

price at the time when the defendant refused to accept [the first, third and fourth] cars. . . ."

The jury found for the plaintiffs in the sum of $621.38; and the defendant alleged exceptions.

The provisions of the sales act, St. 1908, c. 237, § 4, cl. 1, which, by § 78, supersede § 5 of R. L. c. 74, are as follows: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upward shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

The case was submitted on briefs.

*J. P. Fagan,* for the defendant.

*J. Cavanagh,* for the plaintiffs.

BRALEY, J.  The presiding judge correctly ruled and instructed the jury that, the sale being of four cars of potatoes at an agreed price, the contract for breach of which damages are sought was indivisible. *Fullam* v. *Wright & Colton Wire Cloth Co.* 196 Mass. 474, 476. *Craig* v. *Lane,* 212 Mass. 195. And the further ruling and instruction that the broker's memorandum was sufficient to satisfy the requirements of the sales act, St. 1908, c. 237, § 4, to which the defendant excepted are free from error. The correspondence between the broker and the defendant also was properly admitted, and afforded ample proof of the broker's authority to act for the defendant in making the bargain, the terms of which as shown by the memorandum were treated by the parties as stating the contract. *Coddington* v. *Goddard,* 16 Gray, 436, 443. *Dodd* v. *Farlow,* 11 Allen, 426. *Remick* v. *Sandford,* 118 Mass. 102, 107. *Hobart* v. *Lubarsky,* 215 Mass. 528.

The bills of lading representing the shipments and known as "order bills of lading" ran to the order of the plaintiffs as consignees "Notify Lane & Co." bore an abbreviated "notation," ("O. R. — S. L. & C.") explained in the evidence as meaning at the "Owner's Risk, Shippers load and count," and no contention is made that the shipments were not made or that delivery was not tendered within a reasonable time after the cars arrived. To

each bill of lading a draft was attached sent through a national bank at the place of shipment to a national bank at the place of destination, drawn for the "amount of potatoes, less freight." We assume, although not specifically stated in the record, that the bills of lading to which the drafts for collection were attached were indorsed in blank by the consignee, and even if the defendant was to be notified, no directions are found allowing him to inspect each car as it arrived until he had paid the draft. *Paddleford* v. *Lane & Co. Inc.* 223 Mass. 113. St. 1908, c. 237, § 47, cl. 3. *Wigton* v. *Bowley,* 130 Mass. 252, 254. *South Deerfield Onion Storage Co.* v. *New York, New Haven, & Hartford Railroad,* 222 Mass. 535, 537.

It was however contended by the defendant that under a custom of the trade, in support of which evidence was offered, he was not required to pay the drafts without first inspecting the potatoes to ascertain whether they were of the kind and quality purchased. This evidence was properly admitted. A local custom to allow inspection by the buyer notwithstanding the absence of such permission in the bill of lading may be shown, and if found the presumption is that the parties contracted accordingly. *South Deerfield Onion Storage Co.* v. *New York, New Haven, & Hartford Railroad,* 222 Mass. 535, 537. And the evidence introduced by the plaintiffs subject to the defendant's exception, that a "buyer of potatoes — dealer — well known to the railroad was permitted to make any inspection of a car load of potatoes without presenting the bill of lading, where the car was consigned to him," also was competent. *Paddleford* v. *Lane & Co. Inc.* 223 Mass. 113, 116, 117.

It moreover is well settled that the sale having been of potatoes to be delivered at a specified place, the plaintiffs, upon proof of delivery, of which there is ample evidence, and that the potatoes in all respects conformed with the contract, need not show acceptance. *Nichols* v. *Morse,* 100 Mass. 523. *Rodman* v. *Guilford,* 112 Mass. 405, 407. *McLean* v. *Richardson,* 127 Mass. 339, 345.

The defendant within twenty-four hours thereafter received notice of the arrival of all the cars, and four days after the last car arrived "took up and paid one of these drafts . . . and received the bill of lading" under the assurance as he testified of the broker, "that it was all right," and "if there was anything about the car that was not right" the plaintiffs "would make it

right." But on the defendant's evidence the contents upon being sacked and weighed having fallen short nearly fifty-seven bushels from the five hundred and sixty bushels called for by the bill of lading, he asked by the thirteenth request for a ruling, that if the jury found this car "contained a substantial quantity less than that called for by the invoice and bill of lading, the delivery of such car was defective, and under the terms of the contract and the circumstances of the case, such defective delivery constituted a material breach of the contract which justified the defendant in refusing to proceed further with the contract."

The request could not have been given. The assurances of the broker need not be considered, as no express or implied authority on the part of the plaintiffs empowering him to vary the contract is shown. *Record* v. *Littlefield,* 218 Mass. 483, 486. By its terms, all the potatoes could have been shipped at the same time, and barring any delay during transportation delivery would have followed in accordance with the shipment.

If however under the bills of lading with the draft attached drawn for the "amount of potatoes, less freight" payable to the bank therein designated at the defendant's place of business, and of delivery, each carload under a custom among shippers and receivers, of which there was evidence, was to be paid for separately, the breach caused by the alleged shortage is severable "giving rise to a claim for compensation, but not to a right to treat the whole contract as broken." *Stewart* v. *Thayer,* 168 Mass. 519. St. 1908, c. 237, § 45. *Barlow Manuf. Co.* v. *Stone,* 200 Mass. 158, 160. See Williston on Sales, §§ 466, 467.

The defendant furthermore having weighed and reshipped the number of bushels actually received after discovery of the shortage, could not restore the plaintiffs to their original position, and the right to rescind was lost. *Miner* v. *Bradley,* 22 Pick. 457, 458.

The fourteenth and fifteenth requests while not given in terms are well covered by the instructions. The judge after stating the custom appearing in evidence, that when "one car of a lot is short" the seller may be called on by the buyer to secure him against loss from a possible shortage in other cars comprised in the same contract, correctly instructed the jury in accordance with the proof, that, if the "custom was that when there was

shortage the parties would get together and come to some agreement, and if that is where the custom stops . . . then that would not go far enough to say that the defendant should be excused from performing his part of the contract.  But if the custom went further and said that, failing to make such an agreement, the defendant would then have a right to give up his contract as to the rest of it, then that would present a question of fact in this case as to whether this defendant was justified in demanding security, and whether security was offered to him, and whether he refused it or not."  *A. J. Tower Co.* v. *Southern Pacific Co.* 184 Mass. 472, 475, 476; *S. C.* 195 Mass. 157.  And "unless the defendant is excused from receiving the three cars by reason of some custom which is invoked in this case, then the plaintiff would be entitled to recover whatever damage he suffer by reason of the failure of the defendant to perform his part of the contract." See *National Contracting Co.* v. *Vulcanite Portland Cement Co.* 192 Mass. 247, 255.

We have considered all the exceptions in so far as argued, and, finding no ground for reversal, the order must be

*Exceptions overruled.*