HARRY E. KINNEY *vs.* MAX HORWITZ ET ALS.

Third Judicial District, Bridgeport, October Term, 1918.
RORABACK, WHEELER, BEACH, GAGER and CURTIS, Js.

A written memorandum containing the subject-matter of a sale, the names of the parties, the price and the place of delivery, and signed by a broker who was the duly-authorized agent of each party in negotiating the contract, is a sufficient compliance with the statute of frauds, § 6131.

A custom or usage of the trade as to the method or mode of payment, enters into and forms part of a contract of sale, unless otherwise provided therein.

While the purchaser of merchandise to be shipped to him by rail must of course have notice of the arrival of the bill of lading, the draft, and the goods, before his obligation to pay therefor can arise,

technical presentation of the draft is not necessary to render him liable.

In the present case the finding showed that the defendants were possessed of all information called for by the contract or which was necessary to enable them to act understandingly with respect to the draft, the bill of lading and the carload of potatoes which they had ordered. *Held* that such finding was amply justified by the evidence contained in a letter of the defendants to the plaintiff, wherein they explained their reasons for delay in unloading the potatoes.

The arrival of a carload of potatoes at the place agreed upon and its location upon a side track ready for unloading, with notice thereof to the buyer, constitutes a delivery within the terms of the contract and completes the seller's obligation; and thereupon (subject to the right of inspection) the title to, or the beneficial right of property in, the potatoes, passes to the buyer, who assumes the risk of loss and is bound to accept and pay for them, notwithstanding the actual possession, or the *jus disponendi*, be reserved until payment is made.

The complaint in the present case alleged a sale and its terms, delivery pursuant thereto, notice thereof to the defendants, and their neglect and refusal to honor the draft, to accept the bill of lading or to pay the price of the potatoes. *Held* that the complaint stated a cause of action for the price of the potatoes upon an executed sale.

Submitted on briefs October 23d, 1918—decided January 30th, 1919.

ACTION to recover the purchase price of a carload of potatoes, brought to and tried by the Superior Court in New Haven County, *Warner, J.;* facts found and judgment rendered for the plaintiff for $1,016, and appeal by the defendants. *No error.*

*Philip Pond, Charles Cohen* and *Barnett Berman,* for the appellants (defendants).

*Harrison Hewitt* and *Charles E. Clark,* for the appellee (plaintiff).

GAGER, J. This is an action to recover the price of a carload of potatoes shipped by the plaintiff in Maine to the defendants, copartners in business in New Haven

under the name of the Newark Produce Company. The potatoes arrived in New Haven on February 4th, 1912, and on the evening of the same day a postal card notice of the arrival was sent the defendants. On February 5th the car was placed on a side track for unloading, and early on the morning of the 5th notice by telephone was given the defendants of the arrival of the car. The potatoes remained in the car, untouched by the defendants, until February 13th, when they were destroyed by fire. The trial court held that the property in the potatoes was in the defendants at the time of the fire, and that they were liable for the price.

There are several reasons of appeal which are well summarized by the appellants as follows: 1. The plaintiff did not prove compliance with the statute of frauds, which is a bar in this action. 2. The plaintiff did not prove performance of the condition precedent to the accrual of the defendants' obligation to pay, to wit, presentation of the draft. 3. The risk of loss was on the plaintiff, who was the owner of the goods at the time of their destruction. 4. The trial court should not have found against the defendants because of any delay, since the complaint did not allege delay and the issue of delay was not raised by the pleadings. 5. The plaintiff's complaint states a cause of action for breach of an executory contract of sale, upon which a judgment for the contract price should not have been founded. 6. The plaintiff, if entitled to any judgment, should have been limited to the recovery of nominal damages.

That the contract for the sale was within the statute of frauds is admitted, and the defendants claim that they are not liable because the contract was not executed in compliance with the statute. The finding shows the contrary. R. E. McLatchy Company were brokers of produce in Boston, and had done business for both plaintiff and defendants. January 30th, 1912,

the plaintiff notified McLatchy Company that he had a carload of potatoes for sale. McLatchy Company by telephone communicated with the defendants in New Haven, who authorized McLatchy Company to offer plaintiff $1.22 per bushel for a car of potatoes delivered to them at New Haven. Thereupon McLatchy Company wired plaintiff: "Ship one car potatoes to Newark Produce Company, New Haven, $1.22 delivered. R. E. McLatchy Company." The plaintiff, immediately upon receipt of this telegram, wired back to McLatchy Company: "Will ship car to New Haven. H. E. Kinney." By letter McLatchy Company on receipt of this telegram, confirmed this sale to the defendants; on the same day the brokers made the following entries on their books: "H. E. Kinney, Burnham, Maine, 1912, Jan. 30, 1 Newark Prod. Co. $6," and upon a card index, the following: "Newark Produce Co. New Haven, Conn. 2, Jan. 30, 1912, 1 car pots., $1.22, H. E. Kinney." The written contract is contained in the order to Kinney signed by the brokers by authority of the defendants, the acceptance of the offer signed by Kinney, followed by written confirmation sent defendants by the broker. The entries are in conformity. This order of the broker is a "note or memorandum in writing of the contract or sale . . . signed by the party to be charged or his agent in that behalf." General Statutes, § 6131. The contract so evidenced contains the essentials of the contract, to wit, the subject of the sale, the names of the parties to the contract, the price and the place of delivery. This is sufficient to satisfy the statute. *O'Sullivan* v. *Overton*, 56 Conn. 102, 105, 14 Atl. 300; *Nichols* v. *Johnson*, 10 Conn. 192, 198; *Roach* v. *Lane*, 226 Mass. 598, 603, 116 N. E. 470. That the signature of the brokers authorized by the defendants is sufficient, see *Butler* v. *Thompson*, 92 U. S. 412; *Coddington* v. *Goddard*, 82 Mass. (16 Gray) 436; *O'Sullivan* v. *Overton*, *supra*.

The court also found a custom of the trade in the following language: "By the custom of the trade a contract for the sale of a carload of potatoes for $1.22 delivered at New Haven, carried with it the provisions that payment should be made by means of a draft for the purchase price drawn by the vendor on vendee, payable upon the arrival of the goods, to which draft should be attached a properly endorsed bill of lading of the goods, which bill of lading was to be delivered to the vendees upon payment of said draft, and further, that the vendees should have the right of inspection of the goods before the payment of the draft; and said custom entered into and formed part of said contract for the sale of said potatoes."

This finding as to custom in no way contradicts the written evidence of the contract. It states how, in the trade, payment was to be made in the absence of contract to the contrary, and its usage becomes a part of the contract. As stated in *Leach* v. *Beardslee,* 22 Conn. 404, 408: "In such case, it may be taken, that the usage entered into, and became part of, the contract." This principle is well established in reference to all contracts whether written or oral. Judge Story, in *The Schooner Reeside,* 2 Sumner (U. S) 567, as quoted with approval in *Seymour* v. *Page,* 33 Conn. 61, 66, said: "The true and appropriate office of a usage or custom is, to interpret the otherwise indeterminate intentions of the parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character." *Wiggin* v. *Federal Stock & Grain Co.,* 77 Conn. 507, 516, 59 Atl. 607; *Skiff* v. *Stoddard,* 63 Conn. 198, 219, 26 Atl. 874, 28 id. 104; *Kilgore* v. *Bulkley,* 14 Conn. 362, 390. It is therefore not only proper, but necessary, in order to do justice between the parties, to construe the con-

tract with reference to the custom as found by the court.

The defendants further claim that the plaintiff did not show performance of the condition precedent to the accrual of the defendants' obligation to pay, to wit, presentation of the draft. There are two answers to this claim: the court has expressly found due and regular presentment to the defendants on the day of its arrival in New Haven, February 2d, 1912. Technical presentment is not necessary to charge the person primarily liable. General Statutes, § 4428. Before there could be any laches or culpable delay on the part of the defendants, they must of course have notice of the arrival of the draft, bill of lading and goods; but the finding shows actual presentment of the draft, full and prompt information that the draft and bill of lading were at the Second National Bank, and that the defendants were further informed on February 4th of the arrival of the potatoes, and on February 5th of the arrival of the car and that it had been placed on tracks in position for unloading. So that it appears from the finding, that by the morning of February 5th the defendants were possessed of all information called for by the contract, or necessary to be known by them to enable them to act with reference to the draft, the bill of lading and the potatoes.

That the finding of the court was amply justified, is apparent from a letter written by defendants to plaintiff December 26th, 1912, in which they say: "We were waiting for the man who bought the car whom we expected to come home before Christmas; but he did not come home. . . . Again, in reference to the car lying on the track we were going to pay the draft on the car of potatoes when we were informed by the railroad that the car was burned. We have no idea how long the car was lying on the track or when we were notified of its arrival." The inference is strong

that the delay of the defendants was purely for their own convenience in connection with a resale. However that may be, the defendants delayed at least a week after full notice and before the destruction of the potatoes without making or attempting to make an inspection or to take the potatoes.

Perhaps the most serious claim of the defendants is that at the time of the fire the risk of loss was on the plaintiff. It appears that the plaintiff on shipping the goods took out a bill of lading to the order of "H. E. Kinney, New Haven, Conn. Notify Newark Produce Company, New Haven, Conn. Inspection allowed"; that the plaintiff attached this bill of lading to a draft upon defendants under their firm name of the Newark Produce Company, for $769.56, payable on the arrival of the goods, and endorsed the bill of lading, "When draft paid deliver to Newark Produce Company, H. E. Kinney," and delivered the draft with the bill of lading attached to his bank for collection, which forwarded it to the Second National Bank of New Haven, at which bank it arrived February 2d; immediately thereafter followed presentments and notices as to the draft and bill of lading and notice of arrival of potatoes, as above stated. On February 13th, 1912, the car caught fire and the potatoes were destroyed, and on February 14th, the defendants, after notice of the fire, refused to pay the draft, and have never paid the draft or for the potatoes. It does not appear that defendants ever inspected the car. The reasonable time within which to inspect was found to be forty-eight hours from date of notice or arrival of car, which was February 4th, at 7 P. M. The contract of sale being entirely valid and the plaintiff having performed his part, the question arises whether, as the bill of lading had not been taken up by the defendants, either the title or the beneficial right of property in the potatoes had passed to the defendants

at the date of the fire. By the terms of the contract the draft was payable upon the arrival of the goods in New Haven, and the bill of lading was endorsed, "When draft paid deliver to Newark Produce Company, H. E. Kinney." In accordance with the custom of the trade and the provisions of § 47 of the Sales Act (General Statutes, § 4713), the bill of lading allowed inspection within a reasonable time. The contract of sale required the delivery of the potatoes in New Haven. Section 19, Rule 5 of the Sales Act (General Statutes, § 4685) provides: "If a contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or have reached the place agreed upon." Here the potatoes were delivered at the place agreed upon, for in a sale by a carload lot, unless otherwise expressed, delivery at the place agreed upon and upon a track ready for unloading is a delivery under the terms of the contract. The defendants did not inspect, but no claim is made on this ground, or that the potatoes were not of the kind and quality required by the contract. The plaintiff had therefore performed his part of the contract fully. The Sales Act provides with reference to performance of the contract, § 41 (General Statutes, § 4707): "It is the duty of the seller to deliver the goods, and of the buyer to accept and pay for the same, in accordance with the terms of the contract to sell or sale." Section 42, General Statutes, § 4708, prescribes that "unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions; that is to say, the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price, and the buyer must be ready and willing to pay the price in exchange for the possession of the

goods." The delivery of the potatoes under the terms of the contract left nothing more for the plaintiff to do; the property in the goods then passed to the defendants, and it at once became the duty of the defendants to accept and pay for them. *Home Pattern Co.* v. *Mertz Co.*, 88 Conn. 22, 25, 99 Atl. 33; *Nichols* v. *Morse*, 100 Mass. 523; *Hatch* v. *Standard Oil Co.*, 100 U. S. 124; *Roach* v. *Lane*, 226 Mass. 598, 116 N. E. 470. The plaintiff, upon proof of delivery at the specified place and with no objection taken to the kind, quality or condition of the potatoes, need not show acceptance to make the sale complete. *Roach* v. *Lane, supra.* The defendants had, to be sure, the right of inspection. In addition to the waiver, implied in the letter above quoted, the finding is that the right was not exercised in a reasonable time.

Section 22 of the Sales Act (General Statutes, § 4688), relating to risk of loss, is as follows: "Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transfered to the buyer the goods are at the buyer's risk whether delivery has been made or not, except that (a) where delivery of the goods has been made to the buyer, or to a bailee for the buyer, in pursuance of the contract, and the property in the goods has been retained by the seller merely to secure performance by the buyer of his obligations under the contract, the goods are at the buyer's risk from the time of such delivery, (b) where delivery has been delayed through the fault of either buyer or seller the goods are at the risk of the party in fault as regards any loss which might not have occurred but for such fault." While the finding does not in express terms so state, it is apparent from all the circumstances that taking the bill to the order of the shipper with directions to deliver to the buyer only on payment of the draft, was

done solely to secure performance of the buyer's obligation to pay; therefore the potatoes were at the buyer's risk from their arrival in New Haven and notice to him of draft, bill of lading and arrival and placing on the sidetrack for unloading.

That this result follows from the terms of the Sales Act, under which alone the case must be decided, is apparent from the reasoning in the recent case of *Alderman Bros. Co.* v. *Westinghouse Air Brake Co.*, 92 Conn. 419, 103 Atl. 267. The only difference between that case and the case now under consideration, is that in that case the contract was for delivery of goods f. o. b. Wilmerding, and the question there was who was to bear the loss which occurred in the course of shipment. The goods in that case were shipped to New Haven and the bill of lading was taken to the seller's agent in New Haven, and it, with draft attached, was forwarded, and the directions upon the bill of lading there, as here, were to notify the purchaser of the goods. We cannot see that it makes any difference with the reasoning of that case, and the application of the Sales Act, whether goods were to be shipped f. o. b. place of shipment, or were to be shipped to a designated place, as here the city of the buyer. Under Rule 5 of § 19 (General Statutes, § 4685), the delivery of the goods in New Haven satisfied the statute as to delivery. In the *Alderman* case, the court held that the delivery at the place provided by the contract was a delivery to the buyer within the meaning of § 22 (General Statutes, § 4688), "notwithstanding the fact that the buyer cannot have possession of the goods until the seller is paid, because the Sales Act contemplates that the seller may at his option reserve the *jus disponendi*." Prior to the Sales Act there may have been some doubt, and indeed the decisions are not harmonious, as to the risk of loss under such circumstances. The difference in opinion

is pointed out and ably commented on by Professor Williston in his chapter upon the risk of loss under the provisions of the Sales Act. Inasmuch as the result reached in this case is in substantial accord with that reached in the *Alderman* case, it is unnecessary to re-examine the matter. It need only be remarked in passing that the differences of opinion as to who should bear the risk of loss arose prior to the enactment of the Sales Act, and we have been referred to no case where the Sales Act has been adopted that holds a rule other than that stated in the *Alderman* case, and which we adopt as applicable to the present case.

The defendants claim that the complaint does not state a cause of action for the price of the potatoes. The complaint alleges a sale and its terms, delivery pursuant to contract, notice of arrival and refusal to pay for the potatoes; the allegation as to the latter being that "defendants neglected to honor said draft and to accept said bill of lading properly endorsed and have at all times neglected and refused to accept said draft or pay said sum of $769.56." This means simply that the defendants did not pay for the goods by draft or otherwise. The obligation declared on is not the draft. The defendants never became liable on that instrument as it was never accepted. They did become liable on the delivery of the potatoes as on an executed sale. That such delivery vested the beneficial property in the potatoes in the defendants, and imposed upon them the risk of loss, has already been shown, and the court committed no error in rendering judgment for the contract price. The liability of the defendants was not simply for breach of an executory contract of sale; the delivery in New Haven completed the sale and the duty to pay therefor arose. The omission of any allegation of delay by the defendants is immaterial. Delivery and failure to pay are the essentials.

The claims for correction of the finding have been examined in detail, and so far as they are material, the court was quite justified in finding as it did.

The decisions reached in the claimed errors discussed above, dispose of the case and render further discussion of specific points in the appeal unnecessary.

There is no error.

In this opinion the other judges concurred.